Lee, J.
The only questions material to be considered in this case are those on the first second and third instructions asked for by the defendant. Eor if at the time of the execution of the deed from Terrill to Lynch or that from the latter to M. H. Garland the premises in controversy were in the actual adversary possession of those under whom the defendant claims such deed could not operate as a transfer of the legal title and as the plaintiff claims no otherwise than through these deeds, he must fail in this action. On the other hand, if at the time of these deeds or either of them, there was no such adversary possession, then any question upon the statute of limitations is out of the case j for even if the Code of 1849 did not extend the period of limitation (a question upon which I express no opinion) still to make out the bar the possession must have been adversary for at least fifteen years before the suit and must therefore have been carried back continuously embracing the period of both deeds to the 21st of December 1834: nor is it necessary to enquire whether the right of entry was tolled by descent cast from Dr. Cabell, because if so tolled, yet if the possession were afterwards surrendered, the descent cast would become immaterial, or if it were abandoned the right of entry would be restored as the law will refer the possession to him who hath the right. Clarke’s lessee v. Courtney, 5 Peters’ R. 318, 354; Taylor’s devisees v. Burnsides, 1 Gratt. 165, 191. *8 Thus the duration and character of Dr. Cabell’s possession become unimportant except so far only as the latter may serve to illustrate the character of the possession of those who came in under and after him.
That Micajah Terrill was not himself in possession of the lot in controversy in the suit against Morris at the date of the decree of the 22d of October 1836 nor that of the deed from the commissioner would not of itself suffice to restrict the operation of the deed to a mere transfer of right of entry which he could not transfer to another; nor although he had not yet taken actual possession himself at the time of his conveyance to Lynch does it therefore follow that no title passed to Lynch. Another element is required to prevent those deeds from operating as transfers of the legal title. The lot must not only have been in the possession of another but that possession must have been under such circumstances and accompanied with such a claim of title as would render it adversary to Terrill. Actual possession by the grantor is not indispensable to give effect to his deed, for if the possession held by another be of a fiduciary character or if its origin and continuance were such as not to amount to a disseizin except at the election of the owner for the purposes of the remedy, it will not impede the operation of the deed. Duval v. Bibb, 3 Call 362; Tabb v. Baird, Ibid. 475; Jackson v. Todd, 2 Caines’ R. 183; Williams v. Snidow, 4 Leigh 14. As the first instruction therefore merely supposed the want of actual possession in Terrill without at all referring to the character of the possession of those by whom it was in fact held, the court may for this cause have very properly refused to give it.
The second and third instructions would seem to be unexceptionable in the statement of the rule of law which they undertook to propound, and the only ground upon which the refusal to give them is to be *9 sustained is either that they presented mere abstract propositions irrelevant and immaterial because there was nothing in the evidence upon which to found the hypothetical case assumed, or that the defendant was in some way estopped or concluded from alleging the possession to have been adversary at the periods referred to. The hypothesis was of adversary possession in a party claiming under Dr. Cabell under whom also the defendant claimed both title and possession: and it was not enough that the court should have thought the evidence of the defendant insufficient to make out-such possession or that the proofs which he offered were overcome by stronger and more cogent proofs the other way. Whether adversary possession or not depends upon the fact of possession and the circumstances under which it was taken and held, especially the animus of the party holding and whether with a claim of title or without any such claim. Thus it was a matter proper for the jury and if there was any evidence tending to show possession and that it was of an adversary character not consistent with the plaintiff’s title, the instructions should not have been refused. For where there is evidence tending to make out the supposed case however inadequate in the opinion of the court or to however little weight it may be deemed entitled it is best and safest to give the instruction if it propound the law correctly. Hopkins v. Richardson, 9 Gratt. 485; Farish v. Reigle, 11 Gratt. 697, 719.
Now it would seem impossible to say there was a total want of evidence tending to make out the adversary possession supposed. There was such proof however much it may have conflicted with other evidence in the case or been overweighed by the opposing proofs of the plaintiff. It was proved that Dr. Cabell enclosed the ground in controversy by a fence which also enclosed another parcel of ground belonging to him, making of the whole an alley thirty feet wide': *10 that he erected a gate leading from the street into the alley thus enclosed and another gate leading from the same into a back lot on which his mansion-house was situated: that he used the ground so enclosed as an alley and wagon and carriage way to his mansion-house lot up to the time of his death and that he occupied a small building that stood on the ground in dispute as a lodging-house for servants. It was in evidence that after his death the ground in controversy was assigned to his widow as part of her dower in his real estate and was used and enjoyed by her as such up to the time of her death in 1843: that after her death the same was allotted to Mrs. Early, then Miss Henrian Cabell a daughter of Dr. Cabell, along with the mansion-house property, as a part of her share of his estate and had been used and enjoyed by her and her tenants up to the commencement of the suit. It was also proved that the mansion-house lot was so situated and so surrounded by other lots and steep cliffs that the alley consisting of the ground in dispute and other ten feet adjoining was the only practicable way to and from it for carriages and vehicles, and that the small brick building on the disputed ground had been removed by the defendant since the suit. One of the witnesses also deposed that M. H. Garland the father of the plaintiff had on one occasion admitted that the line separating the alley of thirty feet from the residue of the lot which was the line claimed by the defendant was the true line between the lot purchased by him from John Lynch and the property belonging to the estate of Dr. Cabell. It is true there was evidence offered by the plaintiff of various acts and declarations of Dr. Cabell tending to show that his possession never was adversary to the title of the plaintiff nor so regarded by himself. The allegations of his answer and cross bill in the case of Micajah Terrill v. Morris, &c. were referred to in this connexion. But however *11 persuasive this evidence may have been, still the whole evidence upon the subject was not perfectly reconcilable and it was proper the jury should weigh it decide upon the controverted fact. Certainly it cannot be said there was no evidence tending to make out the case which the defendant assumed.
But it is said Dr. Cabell was a party in the chancery suit and that the question both of title and possession must be regarded as res adjudícala under the decree of October 1836; and that even if he had never been a party, yet as he was a purchaser pendente lite, those claiming under him are concluded by that decree and thus estopped from setting up any possession as adversary to the title of the plaintiff.
It is true Dr. Cabell was made a party by an amended bill, but he died in August 1834 and his death was suggested on the record in February 1835. The case was however never revived against his heirs, so that they cannot be concluded by the decree of October 1836 upon the principle which binds those who are parties to a cause at the time a judgment or decree is pronounced and thus have had opportunity to make full defence. Nor is there anything on the face of the decree to authorize the court upon a bare inspection to hold them estopped from setting up an adversary possession even anterior to its date in a subsequent action. It does not ascertain that Dr. Cabell was a purchaser pendente lite. That question was not in issue in the cause. The amended bill contains no allegation whatever in reference to the twenty feet now in controversy. The purchase which it imputes, to Dr. Cabell was of the other ten feet not now in controversy. Nor does it make Coleman, of whom Dr. Cabell purchased the twenty feet, a party or allude to him in any manner whatever. It is true Dr. Cabell in his answer states that he purchased the lot of Coleman during the pendency of the case in the Court of *12 appeals and that Coleman had derived his interest from Morris though he does not state clearly when; but there is nothing more in the whole case upon this subject. This cannot amount to an estoppel upon the question of adversary possession, in a subsequent action, upon which the court can undertake to pronounce and hold the party concluded. It was but evidence to go to the jury as the admission of Dr. Cabell to have such weight as they might deem it entitled to, in common with the other evidence offered of his acts and declarations. The decree was no adjudication of the question whether Dr. Cabell was a purchaser under such circumstances that he and those claiming under him would be bound thereby, nor could it be conclusive upon that question. It was evidence and conclusive of the fact that such a decree had been rendered, but it was not conclusive as against the heirs of Dr. Cabell who were no parties, and whose ancestor the record itself showed was dead at the time it was pronounced, that that ancestor was such a purchaser. Even as against a party a judgment or decree is held to be conclusive only upon what was brought directly in issue and not upon a matter incidentally brought into controversy. Duchess of Kingston’s Case, 20 How. St. Tr. 358, 538; 1 Phil. Ev. 321, Cow. & Hill’s n. 557 ; Arnold v. Arnold, 17 Pick. R. 4; 1 Stark. Ev. (Phil. ed. 1830,) p. 198. And as to those who are no parties though it is always evidence to prove that such judgment or decree was rendered yet it is not so as a medium of proof of ulterior facts upon which it was founded or which may be recited in the record. 1 Stark. Ev. 191 and n; 1 Gfreenh Ev. § 527, 538. Of necessity in a subsequent and separate suit against one who was no party to the previous cause, but whom it is sought to hold bound by the judgment as a purchaser pendente lite, resort must be had to proof extrinsic to the judgment that he stood in circnm *13 stances which made the judgment so binding upon him. And although in the record there may be an admission or declaration in regard to the fact it is admitted in evidence against him not as a judgment conclusively establishing the fact but as a deliberate declaration or admission that the fact was so, as indeed it might be admitted for such purpose even in favor of a stranger; and it is to be treated according to the principles governing admissions to which class it properly belongs. 1 G-reenl. Ev. § 527, a. In this case it will be noticed the plaintiff introduced Robert Morris as a witness before the jury and sought to prove by him that Coleman’s authority to sell the lot was acquired and the sale made by him to Br. Cabell while the case was pending in the Court of appeals.
If the decree then was not conclusive upon its face as to the character of the previous possession, still less could it be so as to that of Mrs. Cabell’s possession after the decree under the assignment of dower. And if it even were so as to the former that could be no good reason why it should be so also as to the latter.
No aid is derived to the argument from the cross bill filed by Dr. Cabell or from the fact that the decree was in that case as well as in the original cause, both being heard together. The object of this bill was to assert the right which Dr. Cabell alleged he had acquired by purchase from Morris of his claim against the estate of Charles Terrill and the decree as to it simply provided for the payment to the administrator of Dr. Cabell of the amount agreed to be due. But the heirs were not parties in this cross suit and there is nothing in it to estop them upon the question of adversary possession. .The allegations of the bill, like those of the answer in the original suit, would of course be evidence against them, but they belong to the class of admissions not to that of judgments and decrees by which the fact is conclusively established.
*14 Upon the question of adversary possession as presented by the second and third instructions, I think it should have been left to the jury to weigh the evidence and draw from it the proper conclusion. Undoubtedly the court might instruct the jury as to the nature and effect of the Us pendens as it might upon any other question of law involved in the enquiry, but to withdraw the case in this form from the jury by first passing upon a question of fact and then refusing the instructions because in its opinion the evidence failed to prove the case assumed would as it seems to me necessarily involve a confusion of the boundaries separating the province of the court from that which properly belongs to the jury.
What has been said disposes of the fourth fifth and sixth instructions, also. The seventh was given by the court but the eighth appears to have passed sub silentio. The failure to give it has however not been assigned as error, nor do I perceive in what view it could be with success. But for the refusal of the court to give the second and third instructions, I am of opinion to reverse the judgment and remand the cause for a new trial.
Daniel and Samuels, Js. concurred in the opinion of Lee, J.
Allen, P. and Moncure, J. dissented. They thought that Cabell was a pendente lite purchaser, and that his possession of the lot was not adverse, but permissive.
Judgment reversed.